**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TAHA ALI MAJMAIE,** | ) |
| | ) |
| **Petitioner,** | ) |
| | )   **No. CIV-26-1035-D** |
| **v.** | ) |
| | ) |
| **MARKWAYNE MULLIN, et al.,** | ) |
| | ) |
| **Respondents.** | ) |

**<u>REPORT AND RECOMMENDATION</u>**

Petitioner Taha Ali Majmaie, a noncitizen,[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. Respondents filed a Response, Doc. 11,[3] and the time for Petitioner to reply has lapsed. *See* Doc. 6.

---

[1]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

[3]    Respondent Chris Gantt, Warden of the Cimarron Correctional Facility, is not a federal official, and the Government did not file a response on his behalf. *See* Doc. 11, at n.1; https://www.corecivic.com/facilities/cimarron-facility (last visited July 10, 2026) (stating Chris Gantt is the current Warden of the Cimarron Correctional Facility). Petitioner is also detained at the

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for habeas relief and order his immediate release subject to an appropriate Order of Supervision (OOS).

## I.    **Factual background and procedural history.**

Petitioner is a native and citizen of Iraq who was admitted to the United States as a refugee on or about June 3, 2013. Doc. 11, at 5 (citing Ex. 1, at 1) & Ex. 2, at 2. Following multiple controlled substance convictions in Texas state court, the Department of Homeland Security (DHS) served Petitioner with a Notice to Appear (NTA) on January 21, 2020, charging him as removable under § 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA).[4] Doc. 11, Ex. 1, at 1 & Ex. 2, at 3. Petitioner applied for asylum, withholding of removal, and Deferral of Removal under the Convention Against Torture (DCAT). Doc. 11, Ex. 1, at 2.

---

Diamondback Correctional Facility rather than the Cimarron Correctional Facility as stated in the Petition. https://locator.ice.gov/odls/#/search (last visited July 10, 2026).

[4]    This section is codified at 8 U.S.C. § 1227(a)(2)(B)(i). That section provides that an admitted noncitizen who "has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." *Id.* § 1227(a)(2)(B)(i).

On July 28, 2020, an Immigration Judge (IJ) ordered Petitioner removed to Iraq but granted him DCAT. Doc. 11, Ex. 2, at 3. After an appeal, the Board of Immigration Appeals (BIA) remanded to the Immigration Court (IC), and the IJ reaffirmed the IC's ruling on May 10, 2021, again ordering Petitioner removed to Iraq while granting DCAT and denying asylum. Doc. 11, Ex. 1, at 15 & Ex. 2, at 4. Petitioner's removal order became administratively final on June 9, 2021. *See* Doc. 11, Ex. 1.[5]

DHS could not effectuate Petitioner's removal, so ICE released him subject to an OOS on June 2, 2021. Doc. 1, Att. 2, at 2; Doc. 11, Ex. 2, at 3. Petitioner's OOS required him to report yearly, which was later changed to every eight months. Doc. 11, Ex. 2, at 3. ICE's reporting receipts for Petitioner repeatedly show "no new/derogatory information" and "No wants, no warrants" during his release. Doc. 1, Att. 2, at 6–8.

On November 18, 2025, Petitioner appeared at the ICE Dallas Field Office for a scheduled reporting appointment. Doc. 1 at 4–5; Doc. 11, Ex. 2, at

---

[5]   Petitioner states "ICE records identify May 28, 2021[,] as the date Petitioner's removal order became final," but the IJ's order was entered on May 10, 2021. *See* Doc. 11, Ex. 1, at 15. So, the IJ's order became administratively final on June 9, 2021. *Id.; see also* 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"); 8 U.S.C. § 1252(b)(1) (establishing 30-day deadline to appeal IJ's removal order).

3. Respondents maintain "database checks revealed that Majmaie had a final order of removal," so ICE took him into custody. Doc. 11, Ex. 2, at 3. The next day, ICE served Petitioner with an I-205 Warrant of Removal/Deportation and transported him to the Diamondback Correctional Facility in Watonga, Oklahoma, where he remains detained. *Id*.[6]

On or about December 3, 2025, a deportation officer contacted removal operations headquarters to request third-country removal for Petitioner. *Id*. at 4. The next day, ICE contacted the State Department to request assistance with third-country removal, and on or about December 11, 2025, the State Department acknowledged the request and stated "further information/guidance would be forthcoming." *Id*. On March 26, 2026, Respondents served Petitioner with a Notice to Alien of File Custody Review, a telephonic interview was conducted, and Petitioner was served an I-229(a) Warning for Failure to Depart. *Id*. Deportation Officer Romeo Foncha states that, "[b]ased on DHS'[s] efforts to obtain travel documents and arrange third country removal," he believes Petitioner's removal "to a third country is significantly likely in the reasonably foreseeable future." *Id*. Respondents have not identified any third countries to which Petitioner might be removed. And

---

[6]     Respondents do not contend that Petitioner failed to comply with any condition of his supervision. They instead revoked his release to enforce the removal order on account of purportedly changed circumstances, specifically, the possibility of third-country removal. *See* Doc. 11, at 11–16 & Ex. 2, at 4.

they do not represent that any countries have agreed to accept Petitioner or issued travel documents for him.

## II.    Petitioner's claims.

Petitioner asserts four claims for relief: (1) a violation of procedural due process under the Fifth Amendment; (2) a violation of the federal regulations governing revocation of an OOS; (3) unlawful post-removal-order detention under 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (4) arbitrary and capricious revocation of supervision. Doc. 1, at 15–18. At bottom, Petitioner contends Respondents unlawfully revoked his OOS and that his removal is not significantly likely in the reasonably foreseeable future. *Id.*

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## IV.    Analysis.

Petitioner's regulatory and procedural due process claims are intertwined, so the undersigned addresses them together and finds Respondents violated their regulations in revoking Petitioner's OOS. And, in any event, Respondents have not carried their burden to show that Petitioner's removal is significantly likely in the reasonably foreseeable future.[7]

### A. Respondents improperly revoked Petitioner's OOS in violation of 8 C.F.R. § 241.13(i)(2)-(3).

Agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954). When a noncitizen has been detained pursuant to a final order of removal, ICE must release the noncitizen on an OOS if it determines there is no significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *Zadvydas*, 533 U.S. at 699–700. Once DHS releases a noncitizen on an OOS, the agency may revoke that release in two circumstances: (1) for a violation of the "conditions of release" specified in the OOS; or (2) "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen]

---

[7] Although Petitioner does not expressly invoke the Administrative Procedure Act (APA), his assertion in Ground Four that Respondents acted in an "arbitrary and capricious manner" could be read to implicate the APA. Doc. 1, at 17-18. To the extent that Petitioner raises an APA claim, the undersigned finds the Court lacks jurisdiction to consider it in this habeas proceeding. The APA does not supply an independent vehicle to challenge the fact or duration of immigration detention. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); 5 U.S.C. § 701(a).

may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2).

A decision to revoke an OOS on account of changed circumstances must rest on an "individualized determination" that those changed circumstances render removal significantly likely in the reasonably foreseeable future. *See Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). And revocation "for either reason triggers a notification requirement and a review process." *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026) (citing 8 C.F.R. § 241.13(i)(3)). Section 241.13(i)(2)-(3) imposes two distinct requirements: the first substantive and the second procedural. 8 C.F.R. § 241.13(i)(2)-(3). And Respondents violated both requirements. The undersigned addresses each requirement in turn.

### 1. Respondents violated § 241.13(i)(2) by revoking Petitioner's release without an individualized determination of changed circumstances.

Section 241.13(i)(2) allows ICE to "revoke an alien's release . . . and return the [noncitizen] to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). ICE must make an *individualized determination* that changed circumstances have rendered the noncitizen's removal significantly likely before revoking release.

7

*See Kong*, 62 F.4th at 619–20. And ICE bears the burden of showing that changed circumstances necessitated revocation. *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) ("the Magistrate Judge correctly placed the burden on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)"). In making that determination, ICE must consider the noncitizen's history of compliance, the Government's prior removal efforts, and the views of the Department of State regarding the prospects for the noncitizen's removal. *See* 8 C.F.R. § 241.13(f).

The undersigned finds Respondents fail to meet their burden of showing changed circumstances necessitated revocation of Petitioner's release. Respondents do not maintain that Petitioner violated any conditions of release before ICE detained him. And there is nothing in the record before the Court to reflect an individualized determination by ICE that circumstances had changed to make Petitioner's removal significantly more likely at the time of Petitioner's re-detention. Instead, every step Respondents identify as supporting removal postdates the re-detention: the request to headquarters and the State Department did not occur until December 2025, and the custody review and I-229(a) warning did not occur until March 2026. Doc. 11, Ex. 2, at 3-4. A determination that must exist *at the time of revocation* cannot be supplied by efforts undertaken weeks or months after the fact. *See Munagi v.*

*McDonald,* 813 F. Supp. 3d 225, 228 (D. Mass. 2025) ("[T]he changed circumstances that make an alien's removal likely in the foreseeable future must have existed at or before the [OOS] revocation; post-hoc justifications are inadequate.").

District courts around the country have repeatedly held that travel document requests made or travel documents obtained after revocation of an OOS cannot constitute the "changed circumstances" that justify revocation under § 241.13(i)(2), because they did not exist at the time of revocation. *Id.* at 229 (ordering release even though the Government had by then obtained travel documents, because they were not requested until after release was revoked); *see also Duong v. Charles*, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (same, where request came nearly a month after revocation); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (a request for travel documents weeks after revocation "could not have constituted the supposedly changed circumstances underlying the Notice"). Here, the only steps Respondents identify, the December 2025 requests to removal operations headquarters and the State Department and the March 2026 custody review, all occurred after the November 18, 2025 revocation and cannot cure ICE's failure to make an individualized determination of changed circumstances.

Even on their own terms, Respondents' efforts amount to no more than internal agency communications that never reached any country with

authority to accept Petitioner. Officer Foncha's declaration reflects a request to removal operations headquarters and a request that the State Department provide "assistance with third country removal," which the State Department merely "acknowledged." Doc. 11, Ex. 2, at 4. Such internal, intra-governmental steps untethered to any actual engagement with a destination country do not establish a significant likelihood of removal. *Cf. Sun v. Noem*, 2025 WL 2800037, at *2–3 (S.D. Cal. Sept. 30, 2025) (vague assertions that the Government is "putting together" a travel-document request are "akin to promising the check is in the mail" and do not show changed circumstances); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (intent to "complete a travel document request" does not make removal significantly likely). That deficiency is especially stark here, where Respondents have not identified any third countries at all, let alone one that has engaged with the request or agreed to accept Petitioner.

District courts in this Circuit have held that a failure to establish changed circumstances under § 241.13(i)(2) "renders the revocation of release ineffective" and itself amounts to a due-process violation justifying release. *Pham*, 2025 WL 3243870, at *1 (quoting *Qui v. Carter*, 2025 WL 2770502, at *4–5 (D. Kan. Sept. 26, 2025)); *see Liu v. Carter*, 2025 WL 1696526, at *2–3 (D. Kan. June 17, 2025). Because ICE revoked Petitioner's OOS without the

10

individualized, changed circumstances determination § 241.13(i)(2) demands, the revocation was unlawful.

**2. Respondents independently violated § 241.13(i)(3) by failing to provide Petitioner notice of the reasons for revocation and a prompt informal interview.**

Section 241.13(i)(3) supplies the procedure that must accompany any revocation:

> Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.

8 C.F.R. § 241.13(i)(3). This regulatory provision imposes two obligations: (a) notice of the *reasons* for revocation, and (b) a prompt informal interview upon return to custody. *Id.* The "reasons for revocation" ICE must provide cannot be conclusory assertions about changed circumstances; instead, ICE must identify specific facts supporting its decision to revoke a noncitizen's OOS. *See Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *3 (W.D. Okla. Mar. 20, 2026) (Section 241.13(i)(3) "requires not just notice, but notice that specifies the reason for revocation of his or her release" (internal quotation marks omitted)).

Respondents fail to satisfy either obligation. ICE detained Petitioner at a routine reporting appointment on November 18, 2025, and served an I-205

11

Warrant of Removal/Deportation the next day. Doc. 11, Ex. 2, at 3. Officer Foncha's declaration does not state that Petitioner received notice of the reasons for the revocation of his release or a prompt informal interview upon his return to custody. *See generally id.* And a warrant of removal "specifie[s] no reasons for the revocation" and therefore does not provide adequate notice under § 241.13(i)(3). *Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1397059, at *3 (W.D. Okla. May 19, 2026), *adopted*, 2026 WL 1495209 (W.D. Okla. May 28, 2026); *see Bui*, 2026 WL 788947, at *3. A generalized or boilerplate notice or no notice at all does not satisfy § 241.13(i)(3). *See Pham*, 2025 WL 3243870, at *1 (collecting cases) ("A majority of district courts have found such regulatory defects amount to due process violations that entitle a petitioner to habeas relief."); *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) (generalized written notice insufficient).

Nor do Respondents' post-detention custody reviews cure ICE's regulatory noncompliance. Respondents conducted a File Custody Review and telephonic interview on March 26, 2026, more than four months after Petitioner's re-detention and served Petitioner an I-229(a) Warning for Failure to Depart that same day. Doc. 11, Ex. 2, at 4. "[S]ubstituted notice[s]" are "not sufficient under § 241.13(i)(3)." *Bui*, 2026 WL 788947, at *3; *accord Thabata*, 2026 WL 1397059, at *3. The interview § 241.13(i)(3) guarantees must come "promptly after [the noncitizen's] return to [ICE] custody" and must afford an

opportunity to respond to stated reasons for revocation. *Bui*, 2026 WL 788947, at *3. A custody review conducted months later, directed at the separate question of continued detention, is not that interview. Petitioner received neither adequate notice nor a prompt interview, so Respondents violated § 241.13(i)(3) as well.

Respondents alternatively argue that any failure to follow §§ 241.4(l) and 241.13(i) was harmless because Petitioner has now received notice of their position through briefing and a declaration, and an opportunity to respond in this Court. Doc. 11, at 7–10 (relying on *Nguyen v. Noem*, 797 F. Supp. 3d 651 (N.D. Tex. 2025)).[8] But "the harmless error doctrine does not apply here," because "regulatory violations under § 241.13 implicate due process concerns even without a prejudice inquiry," and such "regulatory defects amount to due process violations that entitle[ ] a petitioner to habeas relief [under § 2241(c)(3)]." *Thabata,* 2026 WL 1495209, at *2 (first quoting *Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4–6 (W.D. Okla. Feb. 20, 2026), and then quoting *Nguyen v. Bondi,* No. CIV-26-0056-HE, 2026 WL

---

[8]    Respondents' additional reliance on *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025), is misplaced. There, the petitioner "underwent a particularized interview process regarding [his] removal after being detained." *Id.* at *2–4. Here, by contrast, Petitioner received no individualized process upon revocation, and the case is more akin to those in which ICE provided only "a perfunctory and generalized statement" or none at all. *See Pham*, 2025 WL 3243870, at *1 n.2.

1034405, at *1 (W.D. Okla. Apr. 16, 2026)); *see also Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026) (rejecting the Government's arguments that a violation of § 241.13 can be harmless and that § 2241 relief is unavailable for a regulatory violation)*; Tran*, 2026 WL 1181700, at *3 ("[S]uch regulatory defects amount to due process violations that entitle a petitioner to habeas relief." (internal quotation marks omitted)).

The undersigned finds Respondents violated § 241.13(i)(2), (i)(3) when ICE revoked Petitioner's OOS, and that these regulatory defects amount to a due process violation warranting habeas relief.

**C.    Independently, Petitioner sufficiently establishes a violation of his Due Process rights under the Fifth Amendment and *Zadvydas*.**

The undersigned recommends granting Petitioner habeas relief on his procedural due process and regulatory violation claims (Grounds One and Two), but in the alternative, and as an independent basis for relief, the undersigned finds Petitioner is also entitled to relief under *Zadvydas*.

Detention of a noncitizen subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the ninety-day removal period. *Zadvydas*, 533 U.S. at 701. The removal period begins on the latest of the events specified in 8 U.S.C. § 1231(a)(1)(B). For Petitioner, it commenced on June 9, 2021, the date his order of removal became administratively final, and expired ninety days thereafter, which was four

14

years ago. After the six-month presumptively reasonable period, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government "must then 'respond with evidence sufficient to rebut that showing' or release the individual." *Bui*, 2026 WL 788947, at *2, 5 (quoting *Zadvydas*, 533 U.S. at 701).

Petitioner's renewed detention, which began on November 18, 2025, has now exceeded the six-month presumptively reasonable period, and the undersigned finds Petitioner meets his burden.

The Government previously released Petitioner on an OOS in 2021 because it could not effectuate his removal to Iraq as Petitioner's removal was deferred under the CAT. *See* Doc. 11, Ex. 1, at 15 & Ex. 2, at 3. Petitioner remained in the community, and the Government took no actions to effectuate his removal. Petitioner's removal to Iraq being barred by an unrebutted grant of CAT deferral supplies good reason to believe his removal is not reasonably foreseeable.

The burden thus shifts to Respondents, who have not rebutted Petitioner's showing. Respondents' evidence consists of Officer Foncha's declaration that ICE requested headquarters and State Department "assistance with third country removal," that the State Department "acknowledged the request," and that he "believe[s]" removal to "a third

country" is significantly likely. Doc. 11, Ex. 2, at 4. Officer Foncha's statements are conclusory and generalized and this Court has repeatedly found such statements insufficient. *See Bui*, 2026 WL 788947, at *5 (the Government "must offer more than generalized evidence" and "must actually make legitimate progress towards removal" (internal quotation marks omitted)); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025) (rejecting conclusory declaration that did not show whether a destination country could or would issue travel documents). And, to the extent Respondents rely on a generalized, government wide uptick in third country removals, this Court has held that an "increase in frequency of removals alone does not demonstrate [a] significant likelihood of removal in the reasonably foreseeable future." *Pham*, 2025 WL 3243870, at *2.[9]

Most significantly, Respondents have not identified a specific third country to which they intend to remove Petitioner. Indeed, Officer Foncha's declaration acknowledges only that Petitioner's family "is attempting to retrieve documents needed to obtain travel documents." Doc. 11, Ex. 2, at 4.

---

[9]    Respondents rely principally on *Surovtsev v. Noem*, 2025 WL 3264479 (N.D. Tex. Oct. 31, 2025), for the proposition that the current administration's "sea change" in pursuing third-country removals "with far greater frequency than before" is itself a changed circumstance making removal significantly likely. Doc. 11, at 17. However, unlike the petitioner in *Surovtsev*, Petitioner has a CAT deferral, affirmatively barring his removal to his designated country, and Respondents fail to identify a third country for his removal.

Respondents suggest that Petitioner's claim is premature because his renewed detention was less than six months when he filed. Doc. 11, at 19. But this Court has permitted *Zadvydas* claims to proceed where they, as here, ripen during the pendency of the case. *See Momennia v. Bondi,* No. CIV-25-1067-J, 2025 WL 3011896 (W.D. Okla. Oct. 15, 2025) (recommending granting habeas relief, in part, based on the petitioner's *Zadvydas* claim, which ripened during the pendency of the case), *adopted,* 2025 WL 3011896, at *1 ("It is undisputed that Petitioner has been detained over six months."); *see also Smith v. Barr,* 444 F. Supp. 3d 1289, 1298 (N.D. Okla. 2020) (denying motion to dismiss habeas petition, arguing the petitioner's *Zadvydas* claim was filed before the expiration of the presumptively reasonable six month period); *Quang Minh Lien v. Sessions, 2*018 WL 4853339, at *4 n.2 (D. Colo. Oct. 5, 2018) ("Petitioner filed his habeas petition before the expiration of the presumptively reasonable six-month period. . . . While Petitioner's claim was not ripe when filed, it is now ripe.").

Petitioner's renewed detention has now run past the six-month presumptively reasonable period, and the question before the Court is whether his removal is significantly likely in the reasonably foreseeable future as matters now stand. It is not. The reasons that made removal not reasonably foreseeable when ICE released Petitioner in 2021 persist. And Respondents' failure to procure a travel document for Petitioner, identify a third country for

17

removal, or make any general progress in their removal efforts all suggest Petitioner's removal remains not reasonably foreseeable. *See Thabata,* 2026 WL 1495209, at *2 (where removal request had gone unanswered for nearly six months, "[s]uch prolonged silence reinforces that removal is not significantly likely in the reasonably foreseeable future"). His continued detention is therefore unlawful.

### D. Appropriate remedy.

Respondents violated Petitioner's procedural due process rights by revoking his OOS without the notice and interview their regulations require, and they have not shown that his removal is significantly likely in the reasonably foreseeable future. Under these circumstances, the appropriate remedy is immediate release subject to the conditions of an appropriate OOS. *See Thabata,* 2026 WL 1397059, at *5; *Bui,* 2026 WL 788947, at *6 (ordering immediate release "subject to an appropriate [OOS]").

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus, Doc. 1, and order his immediate release from custody within three business days, subject to an appropriate OOS. **Finally, the undersigned recommends the Court order Respondents to certify compliance by filing a status report within ten business days of the Court's Order, and provide a copy of**

**the Court's Order to the Warden of the Diamondback Correctional Facility.**

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 13, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[10] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 10th day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that the rule establishing a 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28"); *see also Whitmore v. Parker*, 484 F. App'x 227, 231 & n.2 (10th Cir. 2012).